IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MELINDA SMITH,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) No. 10 C 5440 |
| **UNITED RESIDENTIAL SERVICES & REAL ESTATE, INC.; MARK S. DIAMOND; URBAN FINANCIAL GROUP, INC.; and JOHN DOES 1-5,** | ) ) ) ) ) ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

In her Second Amended Complaint, plaintiff Melinda Smith ("Smith") asserts counts against Urban Financial Group, Inc. ("Urban") on behalf of herself and a putative statewide class under the Illinois Consumer Fraud Act, 815 ILCS 505/2 (Count II); the Illinois Fairness in Lending Act, 815 ILCS 120/3 (Count III); the Civil Rights Act, 42 U.S.C. § 1981 (Count IV); the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619 (Count V); and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691-1691f (Count VI). Plaintiff also seeks to have her mortgage loan rescinded under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.* (Count I). Urban has moved to dismiss all the claims brought against it. For the following reasons, Urban's motion is granted in part and denied in part.

I.

Plaintiff Melinda Smith, who is African-American, is an 85-

year old widow on a fixed income who lives in a house she owns in Chicago. Her home is located in the predominantly African-American community of Austin/West Garfield. In or about June 2009, plaintiff was solicited for a reverse mortgage loan by Darren Crawford, who worked for Bernard Mortgage Corporation ("Bernard"). Crawford ultimately arranged for plaintiff to enter into a reverse mortgage loan with defendant lender, Urban. Plaintiff alleges that she did not understand the terms of the reverse mortgage loan and she only received copies of her closing documents weeks after the closing. Plaintiff alleges that Bernard and Urban originated a reverse mortgage loan with unfavorable terms. In addition, Urban paid Bernard $1,272.62 to Bernard in the form of a yield spread premium ("YSP"). The YSP was paid for the purpose of increasing the interest rate on Urban's loan beyond the "par" rate that she qualified for. The lender's payment of a YSP and the broker's consequent imposition of a higher interest rate are unrelated to the applicant's qualifications or credit risk.

In this case, plaintiff alleges that Urban's conduct was racially discriminatory in intent and/or effect. Further, she claims it had a discriminatory impact because Urban's policy imposes or authorizes mark-ups in interest rates on loans to minority borrowers more frequently and in greater amounts, on average, than it does on loans to its Caucasian borrowers.

II.

To survive a Rule 12(b)(6) motion, "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting Fed. R. Civ. P. 8(a)(2)). The facts[1] must provide the defendant with "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The plaintiff need not plead particularized facts, but the factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Id.*

**Agency**

"Agency is a fiduciary relationship in which the agent has the power to act on the principal's behalf." *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.* 376 F.3d 664, 672 (7th Cir. 2004). The test for agency is "whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Chemtool, Inc. v. Lubrication*

---

[1] Both parties filed extrinsic information in support of their respective positions. Generally speaking, the submission of facts or evidence outside the allegations of the complaint is improper under Federal Rule of Civil Procedure 12(b)(6). Beyond the exceptions specifically mentioned herein, I have elected to ignore the extrinsic submissions rather than convert the motion to a motion for summary judgment.

3

*Techs.*, 148 F.3d 742, 745 (7th Cir. 1998). "In the broker-lender context, if the evidence indicates that 'the broker had a close relationship or far more authority than that of simply bringing the borrower and lender together,' then the Court 'may deem the broker to be an agent of the lender.'" *Whitley v. Taylor Bean & Whitacker Mortgage Corp.*, 607 F. Supp. 2d 885, 895 (N.D. Ill. 2009) (quoting *Taylor Bean & Whitacker Mortgage Co. v. Cebulak*, No. 03 C 7425, 2004 WL 2106605, at *12 (N.D. Ill. Sept. 20, 2004)).

Urban argues that Counts II through VI should be dismissed because plaintiff cannot show that Bernard was Urban's agent. Specifically, Urban asserts that agency is foreclosed by the "Reverse Mortgage Correspondent Agreement," a written agreement[2] between Bernard and Urban which states that the relationship between Urban and Bernard is "an independent contractor relationship." Urban Mem. at Ex. G. This agreement also states that Bernard may not represent to anyone that Bernard "is acting as an agent for or on behalf of Urban." *Id*. Further, Urban asserts that "[n]othing implicates Urban." Urban Mem. at 10.

Given the allegations presented and the fact that the issue of agency is best decided at the summary judgment stage, *see Hill v.*

---

[2] Urban argues that I may properly consider this document as it was referred to in plaintiff's SAC and is central to one of her claims. *See Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Plaintiff does not dispute this. In light of the fact that plaintiff refers to this agreement in her complaint, I will consider this document in this analysis.

4

*Shell Oil Co.*, 78 F. Supp. 2d 764, 769 (N.D. Ill. 1999), I do not conclude that the Reverse Mortgage Correspondent Agreement is dispositive as a matter of law on the question of agency. *See Letsos v. Century 21-New West Realty*, 675 N.E. 2d 217, 224 (Ill. App. Ct. 1996) (noting that a factfinder could conclude party was acting as an agent despite language in contract that he was an "independent contractor"). In support of her theory of agency, plaintiff alleges that Bernard arranged a significant number of loans for Urban. She alleges that Bernard utilized Urban's credit granting policies, rate sheets, and loan software to process many loans. Plaintiff further alleges that Urban controlled the ultimate terms of financing by means of the control it exercised over Bernard's compensation: the higher the interest rate and loan principal, the greater the amount of compensation paid to it by Urban. These allegations indicate that the relationship between Urban and Bernard was more involved than simply bringing a borrower together with a lender. I find these allegations are sufficient at this stage.[3] *See Taylor*, 2004 WL 2106605, at *12 (noting that presence or absence of an agency relationship is a question of fact best resolved at summary judgment).

---

[3] Urban relies primarily on *Steele v. GE Money Bank*, No. 08 C 1880, 2009 WL 393860 (N.D. Ill. Feb. 17, 2009), a case in which the district court did not find the allegations of agency sufficient to survive a motion to dismiss. I respectfully disagree with the *Steele* court's ruling on agency, and conclude that the allegations in this case are sufficient to survive at this stage.

**Count I: Truth In Lending Act**

Plaintiff alleges in Count I that Urban: (1) failed to timely provide a "final TILA Disclosure Statement"; (2) failed to timely provide plaintiff with federal Notice of Right to Cancel forms, which violated TILA's requirement that the forms "clearly and conspicuously" disclose the final date to cancel; (3) only provided estimated disclosures on the final TILA Disclosure Statements; and (4) failed to deliver the special disclosures required by TILA for reverse mortgages. SAC ¶¶ 106-10.

Urban argues that plaintiff's first and second bases should be dismissed because plaintiff signed an "acknowledgment of receipt," in which she acknowledged receipt of the final TILA Disclosure Statement and the federal Notice of Right to Cancel forms. *See* Urban Ex. C.[4] Plaintiff responds that a signed acknowledgment by the consumer "does no more than create a rebuttable presumption of delivery," *see* 15 U.S.C. § 1635(c). Here, plaintiff alleges in the complaint that she did not, in fact, receive copies of any documents at the closing. That is sufficient at this stage.[5]

---

[4] Because these documents are mentioned in the complaint and are central to plaintiff's claim, I will consider them. *See* footnote 2.

[5] Rather frustratingly, at multiple points throughout its memorandum, Urban presents arguments in single sentences, with no explanation or analysis whatsoever. It is not the job of the court to formulate and develop arguments for the parties. Here, for example, in response to plaintiff's allegation that the Notice of Right to Cancel does not "clearly and conspicuously" disclose the final date to cancel, Urban states that "12 C.F.R. § 226.23(B)(1)

Turning to the third and fourth bases, Urban argues that the estimated disclosures on the final TILA Disclosure Statement are permitted under 15 U.S.C. § 1631(c) and 12 C.F.R. § 226.17(c)(2). Moreover, Urban maintains that plaintiff did in fact receive the special disclosures that TILA requires for reverse mortgages as evidenced by the Residential Loan Application for Reverse Mortgages which was signed by plaintiff on August 10, 2009. Plaintiff makes no attempt to counter these arguments. I therefore grant Urban's motion to dismiss these allegations as uncontroverted. The rest of plaintiff's TILA claim[6] survives.

**Count II: Illinois Consumer Fraud Act**

Plaintiff alleges Urban violated the ICFA by engaging in unfair and/or deceptive acts and practices in a variety of ways. SAC ¶117. Urban attacks some, but not all, of plaintiff's ICFA allegations.[7] In response to plaintiff's allegations that Urban

---

specifies the requirements in paragraphs "I" to "v." These criteria are met." Urban makes no attempt to present any explanation or analysis of the criteria and how they are met here. I reject this argument as undeveloped.

[6] Plaintiff, in her discussion of the TILA claim, appears to argue that Urban also violated TILA by improperly disbursing the loan proceeds before the rescission period had expired. Because this allegation is not contained in the Second Amended Complaint, I did not consider it.

[7] In its reply brief, Urban for the first time argues that plaintiff may not pursue an ICFA claim when she is also pursuing an ECOA claim. Arguments presented for the first time in a reply brief are not properly presented. *See Nelson v. LaCrosse Cty. Dist. Atty*, 301 F.3d 820, 836 (7th Cir. 2002) (arguments raised for the first time in reply are waived); *Edwards v. Honeywell, Inc.*,

7

did not hold the HUD-required counseling session and did not adequately explain the loan terms to plaintiff, Urban points to a "Certificate of HCEM Counseling" signed by plaintiff which indicates that the required session occurred. In contrast, the SAC clearly alleges that the counseling never occurred and the loan terms were never explained to her. In light of the fact that any signed acknowledgment merely creates a rebuttable presumption that plaintiff received the counseling, plaintiff's allegations to the contrary are sufficient at this stage.[8] Urban also states that "SAC ¶ 117(a) fails because Plaintiff alleges that Bernard had all contact with the Plaintiff." Urban Mem. at 11. Given the fact that plaintiff's allegations of agency are sufficient at this stage, Urban's argument is unpersuasive. Urban's motion to dismiss the ICFA claim is denied.

**Count III: Illinois Fairness in Lending Act**

The Illinois Fairness in Lending Act prohibits any residential mortgage lender from "deny[ing] or vary[ing] the terms of a loan on the sole basis of the borrower's race, gender, disability or

---

960 F.2d 673 (7th Cir. 1992) (district court erred in basing summary judgment ruling on argument not raised in opening memorandum).

[8] Urban argues that "SAC § 117(d) fails as shown in Section IV [dealing with TILA claim] herein." *Id*. Once again, Urban makes no attempt to explain why, or provide any legal support for the notion that, activities which do not violate TILA could not nevertheless be considered deceptive or fraudulent under the ICFA. Because this argument is undeveloped and unsupported, I will not consider it.

8

national origin" as well as the "geographical location of the real estate." 815 ILCS 120/3. In Count III, plaintiff alleges that Urban varied the terms of the loan to plaintiff solely on the basis of race, gender and/or the geographical location of her real estate. Plaintiff claims that Urban originated to plaintiff (and other women and minorities) a loan with a higher interest rate, on average, than its loans to similarly situated, Caucasian male borrowers.

In addition to arguing generally that plaintiff's allegations fail to satisfy *Iqbal* and *Twombly*, Urban's main argument in favor of dismissal is that the IFLA claim "fails given the allegations in Count II, and the requirements that Plaintiff elect remedies. 815 ILCS 120/5(b)." Urban Mem. at 12. In other words, Urban argues that plaintiff may not pursue a IFLA claim when she is also pursuing an ICFA claim.

The IFLA states in part that "[i]f the same events or circumstances would constitute the basis for an action under this Act or an action under any other Act, the aggrieved person may elect between the remedies proposed by the two Acts but may not bring actions . . . under more than one of the two Acts in relation to those same events or circumstances." 815 ILCS 120/5(b). "The plain language of the statute requires a plaintiff to choose between the IFLA or any other act he wishes to pursue if the events which give rise to both claims are the same." *Haymer v.*

*Countrywide Bank, FSB*, No. 10 C 5910, 2011 WL 2790172, at * 2 (N.D. Ill. July 15, 2011). Thus, plaintiff may not pursue her IFLA claim, in addition to her other claims, because they all arise out of her September 2009 loan.[9] Count III is dismissed.

**Causation**

Urban also argues that Counts II through VI should be dismissed because plaintiff cannot show causation. Lumping five[10] claims together, Urban argues generally that the FHA, the ECOA, the Civil Rights Act and the ICFA all "incorporate[] notions of proximate cause." Urban Mem. at 13. Urban argues that plaintiff cannot show proximate cause in any of these actions because "a superseding or intervening act broke any alleged causal connection between Plaintiff and Urban, which absolves Urban of liability to Plaintiff." *Id.* Specifically, Urban maintains that it was Bernard, and not Urban, who contacted plaintiff, conducted all of the communications with plaintiff, and completed plaintiff's loan

---

[9] Plaintiff attempts to avoid this conclusion by arguing that legislative history suggests that IFLA's election of remedies requirement only applies to claims under the Illinois Human Rights Act. This argument contradicts that clear language of the statute which mentions a claim brought under "any other Act." "It is well settled that the plain language of a statute is the best evidence of its meaning and the most reliable indicator of congressional intent." *Haymer*, 2011 WL 2790172, at *2, n.2 (citing *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Cullum Cos.*, 973 F.2d 1333, 1339 (7th Cir. 1992)).

[10] Although it opens its argument with the statement that there is no causation in "Counts II through VI," Urban does not specifically address plaintiff's IFLA claim (Count III). Urban Mem. at 13.

application.  Urban stresses that plaintiff herself admits that Urban had no direct contact with her.  Further, Urban points out that plaintiff ultimately selected the interest rate of her loan (she was offered four different interest rates and ultimately selected the only interest rate associated with a fixed rate mortgage).

Pointing to the fact that she alleges that Urban's discretionary pricing policy caused a disparate impact on loan pricing for plaintiff and other minorities, plaintiff argues that she has adequately pled causation.

First of all, it is highly questionable if Urban can properly attempt to argue that all of these causes of action lack causation, without a discussion, separately, of each claim.  The elements of these claims are not identical, and, although Urban attempts to do so, it is quite difficult to discuss causation across all these different claims.  Having said that, to the extent it is even arguably possible to analyze Urban's argument across all these claims, I conclude that, given plaintiff's allegations, causation has been adequately pled. *See e.g., Steele*, 2009 WL 393860, at *5 (N.D. Ill. Feb. 17, 2009) (finding plaintiff's complaint "plausibly points the finger at defendants' alleged practices and concluding that parties' conflicting arguments regarding causation could not be decided at motion to dismiss).  Although plaintiff utilized Bernard as her broker, she alleges that Urban controlled Bernard

through Urban's policies. In other words, plaintiff asserts that "Bernard, and other brokers, were mere conduits for loan applications for Urban and, in essence, salesman on commission who promoted Urban's products, used Urban's software and forms to process and close loans and who up-charged customers on Urban's behalf in return for payment from Urban." Pl.'s Resp. at 23-24; SAC ¶¶ 64-84. I am not convinced that the fact that plaintiff "selected" one of four offered interest rates means that there was no causation here. According to the allegations in the complaint, the interest rates she was offered were higher than they would otherwise have been (without the YSP), and the allegations posit that Urban ultimately controlled the four rates offered to her. These allegations regarding causation are sufficient at this stage.

**Class Allegations**

In the SAC, plaintiff alleged a class going back four years for all claims, despite the fact that some of her claims have shorter statute of limitations. In the final paragraph of its memorandum, Urban makes certain arguments about the proper starting and ending dates of the putative class. In response, plaintiff requested leave to amend her complaint "to allege a class period appropriate to each claim." Pl.'s Resp. at 34. I will allow plaintiff seven (7) days from the date of this order to file her amended complaint. Given the fact that plaintiff has not yet moved for class certification, I find it premature to address Urban's

arguments.  I will deal with any remaining issues when I rule on plaintiff's motion for class certification.

III.

For all the foregoing reasons, Urban's motion to dismiss is granted in part and denied in part.  In order to amend her class allegations, plaintiff shall file an amended complaint within seven (7) days of the date of this order.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: July 25, 2011